# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA SELDIN, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HSN, INC., and INGENIOUS DESIGNS, LLC.,<br><br>Defendants. | Case No.: 17-cv-2183-AJB-MDD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. No. 28) |

Presently before the Court is Defendants HSN, Inc. and Ingenious Designs, LLC's (collectively referred to as "Defendants") motion to dismiss Plaintiff Barbara Seldin's first amended complaint ("FAC"). (Doc. No. 28.) Plaintiff Barbara Seldin ("Plaintiff") opposes the motion. (Doc. No. 30.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

///
///
///

## I.   BACKGROUND

The following allegations are taken from the FAC and are construed as true for the limited purpose of resolving this motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

In 2003, Defendants released the My Little Steamer Products to the market for the first time. (Doc. No. 26 ¶ 9.) Defendant HSN, Inc. is a foreign corporation that is a retailer of consumer products it markets and sells through the HSN television network. (*Id.* ¶ 4.) Defendant Ingenious Designs, LLC is a wholly owned subsidiary of the Home Shopping Network and a foreign limited liability company that manufactures, sells, and distributes consumer products, including the My Little Steamer through HSN's television network. (*Id.* ¶ 5.) In addition to television, the Steamer Products are also sold and distributed through other retailers, digital platforms, and outlet stores. (*Id.* ¶ 9.)

Beginning in or before February of 2016, Defendants became aware that the Steamer Products were defective and dangerous in nature. (*Id.* ¶ 11.) Specifically, in February of 2016, while producing and filming an upcoming live segment, HSN employees and professional models being featured in the video, were burned by hot steam and boiling water that leaked out of the Steamers. (*Id.* ¶¶ 11, 12.) The producer of the shoot was so concerned about the malfunctioning products that he notified Defendants' senior management of the products' purportedly dangerous nature. (*Id.* ¶ 15.) In response, the Quality Control Department advised the producer that the faulty Steamers would be sent to Ingenious Designs in New York for testing. (*Id.* ¶ 16.)

Within a matter of weeks after the foregoing incident, HSN did a live promotional television segment selling the Steamer Products. (*Id.* ¶ 17.) The Joy Mangano website that promotes and sells the Steamers provides the following representations: "Developed over 15 years, carefully calibrated steam channels create unmatched power[]" and "No spitting. No Staining. No Burning. No Worries." (*Id.* ¶ 21.)

In September of 2016, Plaintiff purchased a Steamer from her local Bed, Bath, and Beyond retailer in California for fifteen dollars. (*Id.* ¶ 23.) While using the Steamer,

Plaintiff encountered the same safety problems discussed above. (*Id.*) Specifically, Plaintiff claims that while using the unit as instructed, the Steamer would leak and spew boiling water and steam in a "dangerous way" onto her.[1] (*Id.*) Fearing for her safety, Plaintiff stopped using her Steamer. (*Id.*) Plaintiff claims that had she known about the Steamer's defects, she would not have purchased the product. (*Id.* ¶ 24.)

In light of these factual allegations, Plaintiff brings four causes of action: (1) violations of the Consumer Legal Remedies Act ("CLRA"); (2) violations of the Unlawful and Unfair Business Practices Act ("UCL"); (3) violations of the False Advertising Law ("FAL"); and (4) violations of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Fitness. (Doc. No. 26.)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint and accepts all factual allegations as true and draws all reasonable inferences in favor of the non-moving party. *See Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

Notwithstanding this deference, the reviewing court need not accept legal

---

[1] The Court notes that the FAC does not clearly allege whether Plaintiff was injured by the boiling water and steam that purportedly leaked out of the steamer. (Doc. No. 26 ¶¶ 23, 24.) Though a reasonable inference is that Plaintiff was burned when the boiling water leaked out of the unit and onto her, this allegation is not pled in the FAC and the Court cannot infer facts that are not alleged. *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

Defendants move to dismiss Plaintiff's FAC on the grounds that Plaintiff (1) lacks Article III standing; (2) fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6); (3) fails to state a claim of fraudulent misrepresentation pursuant to Rule 9(b); and (4) fails to establish this Court's personal jurisdiction over Defendants. (*See generally* Doc. No. 28-1.) Plaintiff challenges Defendants on every contention. (Doc. No. 30.)

### A. Plaintiff has Article III Standing

Logically, the Court first analyzes whether Plaintiff has standing to bring her claims in this Court. Defendants assert that Plaintiff lacks standing as her claims for monetary and injunctive relief are not actual and imminent harms and that in cases of insufficient product performance, a plaintiff must allege more than overpaying for a defective product. (Doc. No. 28-1 at 16–17.) In opposition, Plaintiff alleges that Defendants have inaccurately read her FAC. (Doc. No. 30 at 24–25.)

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Thus, this doctrine limits the group of litigants allowed to maintain a lawsuit in federal court to seek redress for a legal wrong. *See Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472–73 (1982). The point of inquiring into standing is to ensure that parties have a "personal stake" in the outcome, but also to make certain that the courts do not extend their reach into the province of the legislative and executive branches. *Id.* at 491.

Case law clearly establishes that the "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These elements are that the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citation omitted). These factors cannot be "inferred argumentatively from averments in the pleadings[,]" *Grace v. Am. Cent. Ins. Co.*, 109 U.S. 278, 284 (1883), but rather must "affirmatively appear in the record . . . ." *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884). The plaintiff bears the burden of proving the foregoing elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

As currently pled, the FAC alleges that Plaintiff had to stop using her Steamer as it would defectively spew hot water and steam onto her. (Doc. No. 26 ¶ 23.) As a result, Plaintiff seeks damages, restitution, and an injunction. (*Id*. at 17.) Further, Plaintiff asserts that she would not have purchased a My Little Steamer for fifteen dollars had she been warned of its dangerous defects prior to purchasing it. (*Id*. ¶¶ 23, 24.)

The Court finds these allegations are sufficient to adequately plead standing. First, economic harm suffered from a purchase is a sufficiently concrete and particularized harm. *See Sierra Club v. Morton,* 405 U.S. 727, 733 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing[.]"); *see also In re Hydroxycut Mktg. and Sales Practices Litig.*, 801 F. Supp. 2d 993, 1003 (S.D. Cal. 2011) ("Courts have held that a plaintiff is injured and has suffered a cognizable and ascertainable loss when he receives less than what he was promised."); *Kielholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 335–36 (N.D. Cal. 2010) (finding an injury-in-fact existed from a purchase of an unusable fireplace despite the absence of fires and physical injury).

Defendants argue that allegations about insufficient performance of how a product functions require a plaintiff to allege something more than overpaying for a defective product. (Doc. No. 28-1 at 16.) To support this contention, Defendants point to *Herrington*

*v. Johnson & Johnson Consumer Companies*, No. C 09-1597 CW, 2010 WL 3448531, at *5 (N.D. Cal. Sept. 1, 2010). (*Id.*)

In *Herrington*, the court found that the plaintiffs had not sufficiently pled standing as they did not plead facts that tended to show a threat of physical harm and did not allege the loss of the valuable good that they still owned. *Id*. Here, Plaintiff's FAC clearly pleads that on each occasion that she used the My Little Steamer as instructed, it produced steam and boiling water in a dangerous way. (Doc. No. 26 ¶ 23.) Accordingly, *Herrington* is not persuasive when compared to the allegations in this matter. Additionally, the Court finds that Defendants' use of *In re Toyota Corp.*, 790 F. Supp. 2d 1152 (C.D. Cal. 2011), is misplaced. (Doc. No. 28-1 at 16.) In *Toyota*, the court stated: "When the economic loss is predicated solely on how a product functions, and the product has not malfunctioned, the Court agrees that something more is required than simply alleging an overpayment for a 'defective' product." *Id.* at 1165 n.11. Presently, Plaintiff's complaint is not that she overpaid for the My Little Steamer. (*See generally* Doc. No. 26.) Instead, she claims that the My Little Steamer is defective and dangerous. (*Id.* ¶ 23.) Further, Plaintiff asserts that users of the product have been burned by the products' dangerous nature. (*Id*. ¶ 12.) Thus, *Toyota* is inapplicable.

Accordingly, the Court **DENIES** Defendants' motion to dismiss based on lack of Article III standing.

### B. Plaintiff's Claims Under the CLRA, UCL, and FAL are Insufficient

Defendants contend that Plaintiff has not alleged the requisite elements of causation and reliance and thus her CLRA, UCL, and FAL claims should be dismissed. (Doc. No. 28-1 at 10–11.) Plaintiff again argues that Defendants have misread her FAC. (Doc. No. 30 at 11–12.)

The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. The CLRA prohibits a host of unfair and deceptive practices, including various forms of misrepresentation. *See* Cal. Civ. Code § 1770. Both the UCL and the CLRA prohibit not only affirmative misrepresentations, but

also material omissions that deceive reasonable consumers. *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012).

Additionally, both the CLRA and the UCL require a plaintiff to demonstrate standing. *See Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014). Thus, a plaintiff may bring a claim under the CLRA so long as she "suffer[ed] any damage as a result of" a proscribed practice under the CLRA. Cal. Civ. Code § 1780(a). Thus, to adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366–67 (2010). As the UCL, CLRA, and FAL claims alleging false and misleading misrepresentations overlap in both scope and elements, courts often consolidate the claims when considering a motion to dismiss. *See Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162–63 (N.D. Cal. 2011).

In the present matter, the Court is analyzing the circumstances surrounding a purported material omission by Defendants. Specifically, Plaintiff alleges that had she known of the Steamers' purported defects, she would not have purchased it. (Doc. No. 26 ¶¶ 24, 49.) Plaintiff then argues that she reasonably relied upon and was deceived by Defendants' failure to disclose the material fact that the My Little Steamer Products leaked and spewed boiling water when being used properly. (*Id*. ¶¶ 47, 63, 71.)

As currently pled, the shortcomings of Plaintiff's FAC are twofold. First, as Defendants highlight, Plaintiff fails to demonstrate that she saw any advertisements or heard any representations made by Defendants in regards to the My Little Steamer. Further, the FAC fails to assert that Plaintiff saw any warning labels on the My Little Steamer product or packaging. Instead, Plaintiff resorts to highlighting Defendant Ingenious Design's warning and instructions pamphlet and the representations made on the promotional website for the Steamer. (*Id*. ¶¶ 20, 21.) These allegations are insufficient.

The Court notes that as Plaintiff has not alleged that she heard any of Defendants' representations or saw any warning labels on the product at issue, she is unable to adequately plead her ability to have seen any material information that would have affected

7

her purchase decision. Thus, Plaintiff has failed to allege reliance. *See Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK, 2016 WL 4729302, at *11 (N.D. Cal. Sept. 12, 2016) (dismissing the plaintiff's CLRA claim as the plaintiff had not alleged that she "relied upon, or even saw, any representations on [the] Ultra Slim wall mount packaging."); *see also Hall v. Sea World Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *6 (S.D. Cal. Dec. 23, 2015) ("[T]he FAC does not specifically allege that Plaintiffs saw or heard, let alone relied on, any advertisements, offers, or other representations of Sea World . . . ."); *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 250–51 (2011) (noting that reliance can be proven in a fraudulent omission case by establishing that "had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently.").

Plaintiff points to paragraph 24 in her FAC and argues that she would have seen the omitted defect safety warning and thus use of *Hall* is misplaced. (Doc. No. 30 at 14.) The Court disagrees. Paragraph 24 states: "The fact that the My Little Steamer leaked and spewed boiling water and steam when being properly used was an important fact to Plaintiff. Had Plaintiff known this fact prior to purchasing the My Little Steamer Product, she would not have purchased this product." (Doc. No. 26 ¶ 24.) Accordingly, as this paragraph does not state what Plaintiff says it does and the FAC does not allege that Plaintiff would have seen a safety warning, this argument is meritless.

Second, Plaintiff's omission claims are not pled with the sufficient specificity required by Federal Rule of Civil Procedure 9(b).

Under California law, a plaintiff may show actual reliance by alleging the defendant omitted information, and that the plaintiff would have behaved differently had defendant disclosed the information. *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993). However, in federal court, a plaintiff alleging omissions must plead these omissions with particularity pursuant to Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

Rule 9(b) requires a plaintiff claiming a fraudulent misrepresentation or omission to

satisfy a heightened pleading standard by pleading, with particularity, the circumstances constituting the fraud. Fed. R. Civ. P. 9(b). Specifically, "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . .'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, a plaintiff pleading averments of fraud must add "the who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (citation and internal quotation marks omitted).

Both parties argue Rule 9's applicability to the present case. (Doc. No. 28-1 at 11–12; Doc. No. 30 at 14–16.) Defendants contend that courts have applied a strict standard in omission cases, (Doc. No. 28-1 at 11), whereas Plaintiff contends that a relaxed interpretation of Rule 9(b) applies to fraudulent omissions, (Doc. No. 30 at 15).

The FAC alleges that Defendants failed to disclose the material fact that the Steamers would spew boiling water and steam in a dangerous way onto the user. (Doc. No. 26 ¶ 47.) Moreover, Plaintiff claims that Defendants knew of these certain dangers, but still failed to disclose them. (*Id.*) According to Plaintiff, had she known of these dangers, she would not have purchased the product. (*Id*. ¶ 24.)

The Court notes that Plaintiff correctly argues that "[a] fraud by omission or fraud by concealment claim, however, 'can succeed without the same level of specificity required by a normal fraud claim.'" *Velasco v. Chrysler Grp. LLC*, No. CV 13-08080 DDP (VBKx), 2014 WL 4187796, at *3 (C.D. Cal. Aug. 22, 2014) (citation omitted). This is because "a plaintiff in a fraudulent concealment suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Baggett v. Hewlett-Packard, Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (citation and internal citations omitted).

However, even under this more relaxed standard, a plaintiff must still plead a fraudulent omission claim with sufficient particularity "so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d

9

531, 540 (9th Cir. 1989). Thus, as already mentioned *supra* p. 7–8, the first issue is that the FAC does not allege that Plaintiff saw or heard any representations or advertisements made by Defendants. *See Daniel v. Ford Motor Co.*, No. CIV 2:11-02890 WBS EFB, 2013 WL 2474934, at *4 (E.D. Cal. June 7, 2013), *reversed in part on other grounds by* 806 F.3d 1217 (9th Cir. 2015), (concluding that the plaintiff's claims based on fraudulent omissions "must fail when [the plaintiff] never viewed a website, advertisement, or other material that could plausibly contain the allegedly omitted fact.").

Further, Plaintiff's assertion that she was deceived by Defendants' failure to "disclose the material fact that My Little Steamer Products leaked and spewed boiling water and steam in a dangerous way while using the unit properly" does not state "the factual context necessary to give the defendant full knowledge of any plausible fraud alleged against it[.]"*Lusson v. Apple, Inc.*, No. 16-cv-00705-VC, 2016 WL 6091527, at *3 (N.D. Cal. Oct. 19, 2016). For instance, the allegations in the FAC do not plead with specificity "the content of the omission and where the omitted information should or could have been revealed . . . or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Hall*, 2015 WL 9659911, at *14 (citation omitted). In the same vein, the Court is unable to determine from the pleadings whether the product Plaintiff purchased is connected to the product Defendants sold and advertised as Plaintiff fails to specify the product's model and features in relation to the products sold by Defendants.

Based on the foregoing, the Court **DISMISSES** Plaintiff's CLRA, UCL, and FAL causes of action.[2]

///
///
///

---

[2] Based upon this, the Court need not reach the remainder of Defendants' arguments based on a failure of a duty to disclose and the failure to identify the role of each Defendant.

## C. Plaintiff's FAL Claim

Despite the Court's foregoing conclusion, it wishes to address Defendants' assertion that California law precludes Plaintiff from pursuing her FAL claim on the basis of omissions. (Doc. No. 28-1 at 14.)

The FAL prohibits any statement in connection with the sale of goods "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. Currently there is a split in this circuit as to whether a FAL cause of action may be based on omissions. *Compare Norcia v. Samsung Telecomms. Am., LLC*. No. 14-cv-00582-JD, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015) ("There can be no FAL claim where there is no 'statement' at all."), *with Tait v. BSH Home Appliances Corp.*, No. SACV 10-00711 DOC (ANx), 2011 WL 3941387, at *2–3 (C.D. Cal. Aug. 31, 2011) (denying a motion to dismiss FAL claims even though the plaintiffs "assert[ed] a theory of misrepresentation by omission").

In this district, and particularly this Court, it has been held that FAL causes of action may be sufficiently pled based on omission claims. *See In re Sony Gaming Networks and Customer Data Sec. Breach Litig.,* 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014) (denying a motion to dismiss based on a plaintiff's fraud-based omission claim); *see also Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1192 (S.D. Cal. 2015) (finding a FAL claim plausible based on a deceptive omission); *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016) ("[A] plaintiff may state a claim under the FAL if the defendant actually made a statement, but omitted information that undercuts the veracity of the statement.").

Consequently, Plaintiff may maintain her FAL claim if she is able to sufficiently allege a claim for fraudulent omission in her amended complaint.

## D. Plaintiff's Claim under The Song-Beverly Consumer Warranty Act

Defendants argue that Plaintiff's Song-Beverly Consumer Warranty Act cause of action fails for two reasons: (1) it is not alleged that HSN manufactured the product at

issue; and (2) the FAC does not contain sufficient factual allegations to establish that the product was unfit for its ordinary and intended purpose. (Doc. No. 28-1 at 14–15.)

> i. HSN as a manufacturer or seller

California recognizes an implied warranty on merchantable goods sold at retail by manufacturers and retail sellers. Cal. Civ. Code § 1792. A manufacturer is an entity that manufactures, assembles, or produces consumer goods. Cal. Civ. Code 1791(j).

Based upon the allegations in the FAC, the pleadings are insufficient to establish that HSN manufactures the purportedly defective My Little Steamer product. Plaintiff alleges that HSN is a "retailer of consumer products it markets, sells and distributes through the HSN television network, the HSN digital shopping portal and other digital platforms, including mobile." (Doc. No. 26 ¶ 4.) Later on in the FAC, Plaintiff then broadly contends that both Defendants manufacture My Little Steamer Products. (*Id*. ¶ 79.) The Court finds the preceding allegation to simply be a broad legal conclusion that is not entitled to the presumption of the truth. *See Ashcroft*, 556 U.S. at 680–81. Accordingly, Plaintiff has not alleged that Defendant HSN is a manufacturer.

Plaintiff contends that the FAC sufficiently alleges that HSN is a manufacturer of the product as she identifies Defendant Ingenious Designs as a subsidiary of HSN. (Doc. No. 30 at 22.) However, California law generally treats parent corporations and its subsidiaries as separate legal entities. *No Cost Conference, Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1298 (S.D. Cal. 2013). A plaintiff can circumvent this general rule by either alleging the alter ego doctrine or establishing that the "subsidiary is the agent of the parent, which requires a showing that the parent so controls the subsidiary as to cause the subsidiary to [] become merely the instrumentality of the parent." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009). Presently, Plaintiff's FAC fails to plead alter ego liability or allegations that demonstrate that Ingenious Designs is so controlled by HSN that it can be considered a subsidiary. Thus, even making all reasonable inferences in Plaintiff's favor, the FAC is insufficient.

Accordingly, Defendants' motion to dismiss Plaintiff's Song-Beverly cause of action against HSN is **GRANTED**.

### ii. My Little Steamer's Fitness for Ordinary Purpose

Defendants also contend that Plaintiff has failed to allege that the My Little Steamer Product was unfit for its ordinary purpose. (Doc. No. 28-1 at 15.) Plaintiff retorts that Defendants' arguments are misplaced. (Doc. No. 30 at 22.)

Implied warranty of merchantability claims require that goods "are fit for the ordinary purposes for which the goods are used." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009). This warranty "provides for a minimum level of quality." *Id.* (quoting *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995)). A plaintiff claiming breach of implied warranty "must show the product did not possess even the most basic degree of fitness for ordinary use." *Burdt v. Whirlpool Corp.*, No. C 15-01563 JSW, 2015 WL 4647929, at *5 (N.D. Cal. Aug. 5, 2015) (citation omitted).

Both parties analogize and distinguish *Burdt* to support their contentions. (Doc. No. 28-1 at 15; Doc. No. 30 at 23.) In *Burdt,* the court held that the plaintiff failed to state a claim because the alleged safety risk of oven racks tending to spill food did not make the oven as a whole unfit to serve its purpose. *Burdt*, 2015 WL 4647929 at *6. Defendants analogize the My Little Steamer Products to the oven rack, because the steamer products inherently create burn risks while still serving its purpose. (Doc. No. 28-1 at 15.) Plaintiff distinguishes the oven from the My Little Steamer Products by contending that the steamers' alleged safety risks render the product unusable beyond is ordinary purpose. (Doc. No. 30 at 23–24.) Explicitly, Plaintiff claims the Steamer cannot steam clothing without the inevitable risk of causing burns to the user. (*Id*.)

Taking all of the allegations in Plaintiff's FAC as true, the Court finds it sufficient in pleading a cause of action under the Song-Beverly Consumer Warranty Act. The FAC alleges that on each occasion that Plaintiff used the My Little Steamer as instructed, it would leak and spew boiling water and steam onto Plaintiff in a "dangerous way." (Doc. No. 26 ¶ 23.) Concerned for her own safety, Plaintiff stopped using the steamer. (*Id*.)

These assertions, though limited, create the rational inference that Plaintiff cannot use the purportedly defective product for its intended ordinary purpose. Thus, unlike *Burdt*, where the plaintiff only "alleged a single instance of impaired use" and the court found that the plaintiff could still use the oven for its intended ordinary purpose "in a safe manner," 2015 WL 4647929, at *6, Plaintiff's FAC asserts that she had to stop using the My Little Steamer as every time she used it, she feared for her safety. (*Id*. ¶ 23.) In sum, Plaintiff has alleged a safety risk that makes the whole product unfit to service its ordinary purpose— steaming clothes. Accordingly, Defendants' motion to dismiss this cause of action is **DENIED**. *See Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303 (2009) ("Such fitness is shown if the product is in safe condition and substantially free of defects[.]") (internal quotation marks omitted); *see also Long v. Graco Children's Prods. Inc.*, Case No. 13-cv-01257-WHO, 2013 WL 4655763, at *11 (N.D. Cal. Aug. 26, 2013) (finding that the plaintiff's Song-Beverly Consumer Warranty Act claim was sufficient as the plaintiff had alleged that the class car seats were not substantially free from defects as the harnesses with buckles were either "unreasonably difficult to unlatch" or "impossible to unlatch.").

### E. The Court's Personal Jurisdiction over Defendants

Defendants move to dismiss Plaintiff's claim under Rule 12(b)(2) for lack of general and specific jurisdiction in California. (Doc. No. 28-1 at 17–19.) Plaintiff challenges Defendants on each contention. (Doc. No. 30 at 26–27.)

For general jurisdiction to exist over a non-resident defendant, the defendant must engage in "continuous and systematic general business contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), that "approximate physical presence" in the forum state. *Bancroft & Masters, Inc., v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.") (internal quotation marks omitted). However, subjecting a corporation to

14

17-cv-2183-AJB-MDD

jurisdiction "in every State in which [it] engages in a substantial, continuous, and systematic course of business" is "unacceptably grasping." *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (internal quotation marks omitted). Unless the facts present "an exceptional case," a corporation is typically "at home" only in the state where it is incorporated or has its principal place of business. *Id.* at 139 n.19.

To be under a court's specific jurisdiction, "(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum . . . ; (2) the claim must be one which arise out of or related to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011). A "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solana Cty.*, 480 U.S. 102, 109 (1987) (citation omitted).

Plaintiff alleges that Ingenious Designs manufactures, sells, and distributes consumer products through HSN's television network as well as Bed, Bath and Beyond. (Doc. No. 26 ¶ 5.) As to HSN, Plaintiff asserts that it is a retailer of consumer products it markets, sells and distributes through the HSN television network. (*Id.* ¶ 4.) Plaintiff then broadly pleads that this Court has personal jurisdiction over Defendants because "Defendants extensively advertise their products to California residents through their television and digital platforms and because Defendants purposely avail themselves of distribution chains likely to lead to the sale of their products to California residents." (*Id.* ¶ 6.)

Even taking Plaintiff's allegations as true, the FAC does not sufficiently plead personal jurisdiction over Defendants. The linchpin is that Plaintiff's personal jurisdiction

15

17-cv-2183-AJB-MDD

arguments do not establish jurisdiction as to HSN and Ingenious Designs individually. This circuit is clear that allegations of "jurisdiction over each defendant must be established individually." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). Thus, Plaintiff's grouping of the Defendants together to establish personal jurisdiction, general or specific, is inadequate.

Accordingly, Plaintiff has not satisfied her burden of alleging personal jurisdiction over Defendants. *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 848 (N.D. Cal. 2018) ("Plaintiffs must make a prima facie showing of jurisdictional facts giving rise to specific jurisdiction over each defendant separately."); *see also Skurkis v. Montelongo*, No. 16-cv-0972 YGR, 2016 WL 4719271, at *4 (N.D. Cal. Sept. 9, 2016) ("This [personal jurisdiction] inquiry requires an analysis of each defendant's contacts in light of plaintiffs' claims. Here, the jurisdictional allegations of the FAC group all defendants together.") (internal citation omitted).

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss. As this is only Plaintiff's first amended complaint, the Court finds leave to amend appropriate. Plaintiff must file a second amended complaint within **twenty-one (21) days** from the date of this Order curing only the deficiencies delineated above. Failure to file an amended complaint will result in dismissal of this case.

**IT IS SO ORDERED**.

Dated: July 25, 2018

Hon. Anthony J. Battaglia
United States District Judge

16

17-cv-2183-AJB-MDD